1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

9   JOHNNY J. CLOUGH,                          CV F   06-0903 DLB HC

10                    Petitioner,              ORDER DENYING PETITION FOR WRIT OF
                                               HABEAS CORPUS, DIRECTING CLERK OF
11          v.                                 COURT TO ENTER JUDGMENT IN FAVOR
                                               OF RESPONDENT, AND DECLINING TO
12                                             ISSUE CERTIFICATE OF APPEALABILITY
     M.S. EVANS,
13                                             [Doc. 1]
                      Respondent.
14   _____/

15

16          Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus

17   pursuant to 28 U.S.C. § 2254.  Pursuant to 28 U.S.C. § 636(c)(1), the parties have consented to

     the jurisdiction of the United States Magistrate Judge.
18
                                        RELEVANT HISTORY
19
            Following jury trial in the California Superior Court for the County of Fresno, Petitioner
20
     was convicted of one count of violation of California Penal Code[1] section 215(a), carjacking; one
21
     count of violation of section 211, robbery; and one count of section 245(a)(2), assault with a
22
     firearm.  Following a court trial on the enhancement for firearm use and his admission of the
23
     enhancement of being on bail at the time of the offense, Petitioner was sentenced to a total term
24
     of imprisonment of 21 years.  (CT 162-163, 258-259.)
25
            Petitioner filed a timely notice of appeal. (Exhibit A.)  On August 15, 2005, the
26
     California Court of Appeal, Fifth Appellate District affirmed Petitioner's conviction and
27

28          _____
                 [1] All further statutory references are to the California Penal Code unless otherwise indicated.

                                                    1

1 sentence. (Exhibit B.)

2      On September 15, 2005, Petitioner filed a petition for review in the California Supreme

3 Court, which was denied on November 16, 2005. (Exhibit C.)

4      Petitioner filed the instant petition for writ of habeas corpus on July 17, 2006.

5 Respondent filed an answer on January 12, 2007. (Court Doc. 18.) Petitioner did not file a

6 traverse.

7 STATEMENT OF FACTS[2]

8      On December 10, 2002, about 10:00 p.m., Christopher Border was
vacuuming his 1987 BMW at a car wash when three young males, including
9 Garcia [Petitioner's co-defendant] and [Petitioner], ran toward him. Border
noticed that [Petitioner] was carrying a shotgun.

10

11      Border tried to get into his car, but [Petitioner] grabbed him, pointed the
shotgun in his face and punched him in the mouth. [Petitioner] pushed Border to
the ground and demanded his keys and money. Garcia smashed the passenger
12 window of the BMW with a baseball bat and yelled at [Petitioner] to "[s]hut him
up. Shut him up for good." [Petitioner] took Border's keys and three or four
13 dollars from his pocket. The third assailant pulled off Border's shoes and ran
away. [Petitioner] and Garcia got into the BMW, [Petitioner] in the driver seat and
14 Garcia in the front passenger seat. [Petitioner] stalled the BMW a few times, but
eventually started the car and drove away.

15

16      Border tried to flag down a motorist. Within a few minutes, Border saw
Fresno police officer Adan Cardona and told him what had occurred. Border gave
the officer a description of the car and of the suspects, including what the suspects
17 were wearing and "the tattoos on his face." Officer Cardona immediately
broadcast the information.

18

19      Officer David Passmore and his partner Officer Eric Panabaker heard the
broadcast and responded to the area where the carjacking occurred. En route they
20 observed two parked black vehicles. One of the vehicles was flashing its
headlights at the other. As the officers approached, one of the cars drove off. The
other car, Border's BMW, was abandoned with its doors open and engine running.
21 A description of the second black car, possibly a four-door Honda sedan, was
broadcast.

22

23      Several minutes later, Officers Martin Van Overbeek and Sam Hernandez
stopped [Petitioner] and Garcia in a four-door Honda that matched Officer
24 Passmore's description. The officers noticed a shotgun between [Petitioner's]
legs and ordered the men to exit the vehicle. The shotgun was discovered to be
25 loaded. An aluminum baseball bat was found between the door frame and the
front passenger seat of the vehicle. Border was brought to the scene and
positively identified both [Petitioner] and Garcia.

26

27     [2] The Court finds the Court of Appeal correctly summarized the facts in its August 15, 2005, opinion.
Thus, the Court adopts the factual recitations set forth by the California Court of Appeal, Fifth Appellate District.
28 (Exhibit B, of Lodged Documents.)

1

2

3

4

[Petitioner] and Garcia were interviewed at the police station.  Garcia waived his *Miranda*[3] rights and admitted having been in the vicinity of the carjacking, claiming he had been looking for a party. [Petitioner] and Garcia were left alone together in an interview room and their conversation was recorded. During this conversation, Office Eloy Escareno thought he heard [Petitioner] whisper, "All I wanted was the Bimmer [sic]."  He also heard Garcia say that, if he had been the victim, he would just have run away.

5

Defense

6

7

8

[Petitioner] and Garcia attacked the interpretation of the recorded conversation, particularly claiming the alleged statement about the "Bimmer" had not occurred.  Garcia's mother testified that the Honda that [Petitioner] and Garcia were driving was hers.  The baseball bat found in the car had been left there a week earlier by someone who had broken the window and burglarized the car.

9

(Exhibit B, Opinion, at 3-4, footnote in original.)

10

DISCUSSION

11

A.     Jurisdiction

12

Relief by way of a petition for writ of habeas corpus extends to a person in custody

13

pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws

14

or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor,

15

529 U.S. 362, 375, 120 S.Ct. 1495, 1504, n.7 (2000).  Petitioner asserts that he suffered

16

violations of his rights as guaranteed by the U.S. Constitution.  The challenged conviction arises

17

out of the Fresno County Superior Court, which is located within the jurisdiction of this Court.

18

28 U.S.C. § 2254(a); 2241(d).

19

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act

20

of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its

21

enactment. Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997; Jeffries v. Wood, 114

22

F.3d 1484, 1499 (9th Cir. 1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting

23

Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107, 117 S.Ct.

24

1114 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059

25

(1997) (holding AEDPA only applicable to cases filed after statute's enactment).  The instant

26

petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

27

28

[3] Miranda v. Arizona, 384 U.S. 436 (1966).

1

2   B.   Standard of Review

3        This Court may entertain a petition for writ of habeas corpus "in behalf of a person in

4   custody pursuant to the judgment of a State court only on the ground that he is in custody in

5   violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

6        The AEDPA altered the standard of review that a federal habeas court must apply with

7   respect to a state prisoner's claim that was adjudicated on the merits in state court. Williams v.

8   Taylor, 120 S.Ct. 1495, 1518-23 (2000).  Under the AEDPA, an application for habeas corpus

9   will not be granted unless the adjudication of the claim "resulted in a decision that was contrary

10  to, or involved an unreasonable application of, clearly established Federal law, as determined by

11  the Supreme Court of the United States;" or "resulted in a decision that was based on an

12  unreasonable determination of the facts in light of the evidence presented in the State Court

13  proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade,123 S.Ct.1166 (2003) (disapproving of

14  the Ninth Circuit's approach in Van Tran v. Lindsey, 212 F.3d 1143 (9th Cir. 2000)); Williams v.

15  Taylor, 120 S.Ct. 1495, 1523 (2000).  "A federal habeas court may not issue the writ simply

16  because that court concludes in its independent judgment that the relevant state-court decision

17  applied clearly established federal law erroneously or incorrectly."  Lockyer, at 1175 (citations

18  omitted).  "Rather, that application must be objectively unreasonable."  Id. (citations omitted).

19       While habeas corpus relief is an important instrument to assure that individuals are

20  constitutionally protected, Barefoot v. Estelle, 463 U.S. 880, 887, 103 S.Ct. 3383, 3391-3392

21  (1983); Harris v. Nelson, 394 U.S. 286, 290, 89 S.Ct. 1082, 1086 (1969), direct review of a

22  criminal conviction is the primary method for a petitioner to challenge that conviction.  Brecht v.

23  Abrahamson, 507 U.S. 619, 633, 113 S.Ct. 1710, 1719 (1993).  In addition, the state court's

24  factual determinations must be presumed correct, and the federal court must accept all factual

25  findings made by the state court unless the petitioner can rebut "the presumption of correctness

26  by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Purkett v. Elem, 514 U.S. 765, 115

27  S.Ct. 1769 (1995); Thompson v. Keohane, 516 U.S. 99, 116 S.Ct. 457 (1995); Langford v. Day,

28  110 F.3d 1380, 1388 (9th Cir. 1997).

1   ///

2   C.   Prosecutorial Misconduct

3

4          Petitioner contends that the prosecutor engaged in misconduct during closing argument

5   by repeatedly commenting on the clear and convincing standard of proof.  Petitioner contends

6   that such comments undermined the court's instructions defining the reasonable doubt standard

7   of proof.

8          During his rebuttal argument, the prosecutor commented, in pertinent part, as follows:

9          [PROSECUTOR, MR. HARRELL]: In fact, I'm very proud of this.
    Because this is what separates us from so many other places in the world.  What it
10   basically means is that 12 people will come in here and listen to the evidence I
    present, and they are going to decide whether they agree with what we have
11   decided; whether they agree these charges are, in fact, true based on the evidence
    presented, without regard to any prejudice, any sympathy, any pity for the
12   defendants, any pity for the victim, but based upon what is presented during the
    course of the trial.  You are going to decide the truth of those charges.  And
13   contrary to what Mr. Sok said, if you listen to this evidence, find the evidence to
    be clear and find it to be convincing, and therefore find the charge to be true, folks
14   your job is done.
          MR. SOK [defense counsel for Petitioner]: Your Honor, that misstates the
15   law.  He said clear and convincing.  That's not the burden.  I request that
    statement be stricken.  That's also prosecutor misconduct that he's trying to apply
16   different burden when he's pointing at the -
          MR. HARRELL: Your Honor, do we need to discuss this in front [sic] of
17   the jury, because I can do that too?
          THE COURT: The jury will be instructed as to the proper burden of proof.
18   Mr. Sok, your objection is overruled.
          MR. HARRELL: Ladies and gentlemen that is the burden of proof.  If you
19   find the evidence to be clear, to be convincing, because that's what it's asking
    you.  You have to have an abiding conviction, a lasting belief that the charge is
20   true.
          MR. SOK: I object again.  He keep [sic] saying clear and convincing.
21   That's not the burden in this case.
          MR. HARRELL: Oh, my goodness.
22          MR. SOK: He keeps saying - it's beyond a reasonable doubt.
          THE COURT: Mr. Sok, it's obvious clear and convincing is not the
23   standard of proof in a criminal case.  It's beyond a reasonable doubt.
          MR. SOK: Thank you.
24          MR. HARRELL: That's correct.  And I don't think I said anything
    different.  What I told you, and I'll say it again because ladies and gentlemen, it is
25   the law.  If you find the evidence clear and convincing and you believe the charge
    to be true based upon that evidence, we have met our burden of proof.
26          MR. SOK: I'm going to object same ground again.  He's doing same [sic]
    think again.
27          THE COURT: I'll sustain the objection.  The burden of proof is beyond a
    reasonable doubt.
28          MR. SOK: This is prosecutor misconduct, Your Honor.

5

1    MR. HARRELL: Ladies and gentlemen, there are three separate standards
of proof in the law: Preponderance of the evidence, clear and convincing
2    evidence, and beyond a reasonable doubt.  Those are standards of proof.  Those
are terms.  Those are words.  They do not – those are standards and terms for
3    standards of proof in the law, but that does not tell you what they mean.  That's
why we have an instruction that tells you what reasonable doubt is.  And what I
4    am telling you is that if you are convinced by this evidence that the charge is true,
and you believe the evidence to be clear that the charge is true, then you people
5    have met the burden.

       MR. SOK: Same objection. That statement has been stricken.  This
6    prosecutor keep [sic] repeating again and again, and Court has instructed that was
stricken.  What he's doing is keep saying clear and convincing.

7       THE COURT: Counsel, will you approach, please.

8    (RT 2712-2714.)

9       MR. HARRELL: If the defense is objecting that the People are trying to
lower their burden for some purpose by simply using the word "clear and
10   convincing," I was very careful when I said, telling the jury if they find the
evidence to be clear, if they find the evidence to be convincing, and they believe
11   the charge on that basis, they believe the evidence to be true therefore the People
have met their burden to prove the case beyond a reasonable doubt.  The words
12   "clear and convincing" are adjectives.  The Court has basically cut the People off
and suggested that the jury has - if the jury is convinced by the evidence that is not
13   enough, and that's not the law under the reasonable doubt standard.  All they have
to be is convinced by the evidence, that is true.  And if they are convinced by all
14   the evidence because they find the evidence to be clear, so be it.  I'm using
adjectives, Your Honor.  I'm not trying to switch the burden.  The record should
15   reflect I have a very large blowup of the People's burden in this case.  It says
"reasonable doubt" and it states what the burden is.  I think the Court has made -
16   frankly, I think the Court's made an error.  I think the People should be allowed to
make their arguments without the interruption of counsel.  Because at this point
17   the Court is leaving the jury with the impression that somehow if they are
convinced by the evidence and they believe the evidence is clear, they have - the
18   People still have not met their burden, and Your Honor, that's not the law on a
reasonable doubt standard.

19      MR. GROSS [defense counsel for Garcia]: I was trying to get in an
objection or join as well.  I will object at this time.  I don't agree with what the
20   People have just stated because they just argued clear and convincing evidence.
One, I object to the use of "clear and convincing" because it's leading.  But if the
21   Court is to allow that what the People stated, if you find the evidence clear and it
to be convincing, and you believe it, you have met your burden, and that is the
22   burden of clear and convincing evidence.

       Now, if they want to go so far and you believe it beyond a reasonable
23   doubt, which is what they are leaving out, which is what the reasonable doubt
definition is, then if the Court is to allow that, then I don't have that much of an
24   objection.  But the definition that was just given is:  if you can find on clear and
convincing evidence are these people are guilty, then you -
25      MR. HARRELL: That's a misstatement.

       MR. GROSS: No, I don't believe it's a misstatement.  Because nothing
26   about if you believe it beyond a reasonable doubt has been stated.  If the evidence
is clear and convincing and you believe it, and leave it at that, that's the burden of
27   clear and convincing evidence.  That's where I have the objection.  And I'm not
going to try and tie the prosecutor's hands that they can't use the word "convince"
28   or the word "clear" in their closing argument or rebuttal, but to throw it in the

6

terms they are doing is to lead the jury to believe that reasonable doubt means if the evidence is clear and it convinces you, you are done if you believe it.

MR. SOK: Your Honor:

THE COURT: Mr. Sok, you want to be heard?

MR. SOK: Yes, I object – I partially agree with Mr. Gross, but what I object to is the use of the word "clear and convincing." What he is doing he's really speaking with two sides of his mouth. One side is saying this is the right standard what is posted there. He said if you believe it, this beyond a reasonable doubt, then next thing coming out he stated was "clear and convincing." He used "clear and convincing" in two or three more words between that. What jury are [sic] going to think is get confused because we talked about three different burdens. He keep using the same adjective "clear and convincing, clear and convincing," and what the jurors are going to do is get confused about standard. And, Your Honor, I objected to language using [sic] by the prosecutor was "clear and convincing" or "clear" and some words and then "convincing." What he's doing is confusing them, and he's misstating the law.

MR. HARRELL: How in the world is that confusing people when its referring to the very instruction which is large on the wall in this courtroom. When counsel sat there talking about two other standards including something in Scotland which there's no application in this courtroom in this case.

THE COURT: Well -

MR. HARRELL: Your Honor, I should say I understand the Court has ruled, but I want it on the record because, frankly, I don't understand why the Court ruled that way. I know the Court made a ruling, but I don't understand why.

MR. SOK: And, Your Honor -

THE COURT: We're dealing with a couple of issues that arise in many cases and that is the scope of argument at the end of a criminal case and objections to arguments to the difficulty of trying to handle those arguments and objections to them. And the second issue, of course, the definition of reasonable doubt. It's no secret that our courts have been wrestling with the concept of reasonable doubt for about as long as we have had the standard. Now, the reason I sustained the objection to the "clear and convincing" is there is a particular standard of proof in our system, the lowest standard involving the least burden on the proponent is preponderance of the evidence, of course, and then there's a higher standard clear and convincing that is used in some cases. It used to be used in more cases than it is now, but it is I think all would concede less than reasonable doubt, and then we have the reasonable doubt standard.

Now, there's nothing in the reasonable doubt instruction about clear and convincing that doesn't mean that counsel can't argue as imaginatively and forcefully as possible as to what the jury ought to consider in trying to reach a decision and applying the reasonable doubt standard. The reason for the Court's sustaining the objection is that while clear and convincing are both adjectives, clear and convincing evidence is a term of art under the law, and it is not a term of art of definition that's to be applied in criminal cases. And the reason - additional reason the objection was sustained, is that there is at least a potential for the jury to be confused.

(RT 2715-2719.)

The trial court denied Petitioner's request to strike the comments and admonish the jury.

(RT 2721-2722.) The prosecutor continued with closing argument explaining:

Ladies and gentlemen, that instruction tells you you are to compare and consider all of the evidence. "Compare" kind of implies there may be some

conflict that you will have to decide any conflict.  That does not equal reasonable doubt because it's after you have made that comparison consideration that you decide whether the charge is true or not, and only if you find the charges are not true, only if you find that you don't have a lasting belief in the truth of the charge, that's when you have reasonable doubt.

(RT 2722-2723.)  Petitioner's counsel objected again arguing the prosecutor misstated the law, which the court overruled.

Subsequent to the finding of guilt, Petitioner and his co-defendant filed motions for a new trial arguing the prosecutor engaged in misconduct.  (Supp. CT 1-43; RT 3601-3616.)  At oral argument on the motion, the trial court found that the prosecutor did not engage in prejudicial misconduct, as he was simply trying to argue his burden of proof.  The trial court found that the jury could not have believed the standard was anything other than beyond a reasonable doubt, and found that in light of the compelling evidence of Petitioner's guilt there simply was no prejudice.  (RT 3615-3616.)  The court ultimately denied the motion for a new trial in a minute order.  (CT 255.)

In the last reasoned state court opinion, the Court of Appeal rejected the claim stating:

Assuming without deciding that the prosecutor's statements constitute misconduct, we find no reasonable likelihood that the jury misapplied these comments and found [Petitioner] guilty on proof less than beyond a reasonable doubt.

First, the trial court corrected the prosecutor's statements.  When the prosecutor misstated the burden of proof–"If you find the evidence clear and convincing and you believe the charge to be true based upon that evidence, we have met our burden of proof"–the court promptly sustained defense counsel's objection and instructed the jury: "The burden of proof is beyond a reasonable doubt."  When the prosecutor used "clear" and "convincing" as adjectives to describe the state of the evidence, the court overruled defense counsel's objections to the statements but reiterated to the jury, "it's obvious clear and convincing is not the standard of proof in a criminal case.  It's beyond a reasonable doubt."  After the arguments concluded, the court instructed the jury that it must apply the law "that I state to you," and "[i]f anything concerning the law said by the attorneys in their arguments or at any other time during the trial conflict with my instructions on law, you must follow my instructions."  (See CALJIC No. 1.00.)  The court also instructed on the presumption of innocence and the prosecution's burden of proving [Petitioner's] guilt[] beyond a reasonable doubt.  (CALJIC No. 2.90.)

Second, the prosecutor's last objectionable statement was ambiguous and confusing and therefore probably worthless to the jury deciding the case: "[Conflicts in the evidence] does not equal reasonable doubt because it's after you have made that comparison consideration that you decide whether the charge is true or not, and only if you find the charges are not true, only if you find that you

8

don't have a lasting belief in the truth of the charge, that's when you have reasonable doubt."

Third, before the prosecutor made his objected-to remarks, all three counsel had argued the proper beyond a reasonable doubt standard of proof to the jury.

Under the circumstances, there is no reasonable likelihood the jury applied the complained-of-comments in an objectionable way. (*People v. Morales*, *supra*, 25 Cal.4th at p.44.)

[Petitioner] argues that the prosecutor's statements effectively took an already fragile definition of beyond a reasonable doubt over the constitutional edge, such that the jury was inadequately instructed in light of the prosecutor's statements. [Petitioner] relies on *People v. Johnson* (2004) 119 Cal.App.4th 976, and *People v. Johnson* (2004) 115 Cal.App.4th 1169, both of which we find distinguishable. In both cases, although CALJIC No. 2.90 proof during jury voir dire by equating it with everyday decision making in a juror's life. (*People v. Johnson*, *supra*, 119 Cal.App.4th at pp. 979-984; *People v. Johnson*, *supra*, 115 Cal.App.4th at pp. 1171-1172.) The *Johnson* cases are distinguishable from this case because the source of the offending comments was the trial judge, who was also the source of the definition of reasonable doubt. Under the circumstances, the jury could justifiably believe that the comments of the trial judge were incorporated into the definition of reasonable doubt with which he instructed them. In contrast, in this case, the objectionable comments came from the prosecutor. Subsequently, the court instructed the jury to follow the law as provided by the trial judge and that, to the extent counsel's argument conflicted with the judge's instructions, the jurors must follow the law provided by the judge. The *Johnson* cases simply are not analogous to this.

(Exhibit B, Opinion, at 12-14.)

The state courts' determination of this issue was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent. A habeas petition will be granted for prosecutorial misconduct only when the misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 171, 106 S.Ct. 2464 (1986) (*quoting* Donnelly v. DeChristoforo, 416 U.S. 637, 643, 94 S.Ct. 1868, 1871 (1974)); see Bonin v. Calderon, 59 F.3d 815, 843 (9th Cir. 1995). To constitute a due process violation, the prosecutorial misconduct must be "of sufficient significance to result in the denial of the defendant's right to a fair trial." Greer v. Miller, 485 U.S. 756, 765, 107 S.Ct. 3102, 3109 (1987) (*quoting* United States v. Bagley, 473 U.S. 667, 105 S.Ct. 3375 (1985)). Under this standard, a petitioner must show that there is a reasonable probability that the error complained of affected the outcome of the trial - i.e., that absent the alleged impropriety, the verdict probably

9

1   would have been different.

2   In the context of improper argument, the reviewing court must examine the likely effect
3   of the statements in the context in which they were made in order to determine if the comments
4   so infected the trial with unfairness as to render the resulting conviction a denial of due process.
5   Turner v. Calderon, 281 F.3d 851, 868 (9th Cir. 2002); Sandoval v. Calderon, 241 F.3d 765, 778
6   (9th Cir. 2001); see also Donnelly, 416 U.S. at 643; Darden, 477 U.S. at 181-183.  Accordingly,
7   in order to place the objectionable comments in context, the court must examine the entire
8   proceedings to resolve a claim of prosecutorial misconduct during closing argument.  See United
9   States v. Robinson, 485 U.S. 25, 33 (1988) ("[P]rosecutorial comment must be examined in
10   context. . . .").

11   ____Here, as stated by the Court of Appeal, the prosecution's rebuttal argument did not
12   amount to misconduct.  Although the trial court sustained a defense objection to the prosecutor's
13   reference to the "clear and convincing" state of the evidence, such argument, when viewed in the
14   context of the entire proceedings, did not so infect the trial with unfairness.  Even if this Court
15   assumes that the prosecutor's comments constituted misconduct, Petitioner has failed to
16   demonstrate that such statements resulted in prejudice.  This is so, because prior to the
17   prosecutor's rebuttal statements, both defense counsel had thoroughly argued the appropriate
18   standard of proof beyond a reasonable doubt.  (RT 2445-2457, 2513, 2517-2518, 2551, 2555-
19   2557.)  In addition, the trial court repeatedly admonished the jury that the standard or proof was
20   not clear and convincing, but rather beyond a reasonable doubt.  (RT 2713, 2741-2742, 2755-
21   2757.)  The prosecution pointed out that during rebuttal argument, the jury could observe a big
22   board clearing depicting the standard of proof beyond a reasonable doubt.  (RT 2715-2726.)
23   Moreover, the jury was instructed that the statements made by the attorneys during argument
24   were not evidence in this case.  (RT 2734; CT 182 [CALJIC No. 1.02].)  Further, the jury was
25   instructed with CALJIC Nos. 2.90 and 2.91 which clearly defined the "reasonable doubt"
26   standard of proof for the jury.  (RT 2741-2742; CT 204-205 [CALJIC 2.90 & 2.91].)  Federal
27   courts presume that juries follow instructions, including cautionary and curative instructions.
28   Weeks v. Angelone, 528 U.S. 225, 234 (2000); Richardson v. Marsh, 481 U.S. 200, 201 (1987);

10

United States v. Brady, 579 F.2d 1121, 1127 (9th Cir. 1978). Thus, upon a thorough review of the instant record, even if it is assumed that the prosecutor committed misconduct by the statements, Petitioner has simply failed to demonstrate that the comments so infected his trial with unfairness resulting in a denial of due process. Accordingly, the state courts' determination of this issue was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

D.    Ineffective Assistance of Counsel

Petitioner contends that his trial counsel rendered ineffective assistance for waiving Petitioner's right to a jury trial on the "on bail" enhancement and advised Petitioner to admit guilt to the charge after the jury had been discharged.

The law governing ineffective assistance of counsel claims is clearly established for the purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d). Canales v. Roe, 151 F.3d 1226, 1229 (9th Cir. 1998.) In a petition for writ of habeas corpus alleging ineffective assistance of counsel, the court must consider two factors. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994). First, the petitioner must show that counsel's performance was deficient, requiring a showing that counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 687. The petitioner must show that counsel's representation fell below an objective standard of reasonableness, and must identify counsel's alleged acts or omissions that were not the result of reasonable professional judgment considering the circumstances. Id. at 688; United States v. Quintero-Barraza, 78 F.3d 1344, 1348 (9th Cir. 1995). Judicial scrutiny of counsel's performance is highly deferential. A court indulges a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Strickland, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984); Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir.1994).

Second, the petitioner must show that counsel's errors were so egregious as to deprive defendant of a fair trial, one whose result is reliable. Strickland, 466 U.S. at 688. The court must also evaluate whether the entire trial was fundamentally unfair or unreliable because of counsel's

ineffectiveness.  Id.; Quintero-Barraza, 78 F.3d at 1345; United States v. Palomba, 31 F.3d 1356,

1461 (9th Cir. 1994).  More precisely, petitioner must show that (1) his attorney's performance

was unreasonable under prevailing professional norms, and, unless prejudice is presumed, that

(2) there is a reasonable probability that, but for counsel's unprofessional errors, the result would

have been different.

A court need not determine whether counsel's performance was deficient before

examining the prejudice suffered by the petitioner as a result of the alleged deficiencies.

Strickland, 466 U.S. 668, 697, 104 S.Ct. 2052, 2074 (1984).  Since it is necessary to prove

prejudice, any deficiency that does not result in prejudice must necessarily fail.

Ineffective assistance of counsel claims are analyzed under the "unreasonable

application" prong of Williams v. Taylor, 529 U.S. 362 (2000).  Weighall v. Middle, 215 F.3d

1058, 1062 (2000).

In rejecting Petitioner's claim on direct appeal, the last reasoned decision of the Court of

Appeal held, in pertinent part:

> We assume, first, that [Petitioner] had a right to a jury trial on the section
> 12022.1 enhancement (*People v. Esquibel* (1992) 3 Cal.App.4th 850, 858);
> second, that the trial court had no jurisdiction to reconvene the jury once it was
> discharged and dispersed (see, e.g., 6 Witkin & Epstein, Cal. Criminal Law (3d
> ed. 2000) Criminal Judgment, § 50, pp. 81-84; *People v. Grider* (1966) 246
> Cal.App.2d 149, 151-154 [jury stopped in the foyer as it was leaving the
> courtroom and then reconvened]; *People v. Lee Yune Chong* (1892) 94 Cal. 379,
> 383-386 [trial judge discharged the jury, left the bench, returned to the bench and
> directed that the jury be located and reconvened]); and third, that the court had no
> authority to empanel a new jury to decide the section 12022.1 allegation. (*People
> v. Majera* (1972) 8 Cal.3d 504, 510-512.)  However, the record does not support
> [Petitioner's] claim that the court lost jurisdiction over the jurors by sending them
> from the courtroom.
>
> [Petitioner] argues: "the jury was discharged.  The jurors were told they
> could wait to speak to counsel, if they elected to do so.  They left the
> courtroom—and the control of the trial court."  Neither statement is followed by a
> citation to the record.
>
> We read the record differently.  After the verdicts were read, the court
> explained to the jurors that they had completed their service, thanked them for that
> service, and then said:
>
> "You have an absolute right to either discuss or not discuss your jury
> deliberations and your verdicts; however, one, following the discharge of the jury,
> which will be shortly, the . . . attorneys may discuss your deliberations with the
> attorneys. [§] I find in most cases that the attorneys want to talk to the jurors for a

few minutes after they are discharged in the jury room, and I take it that's the case here." (Italics added.)

The court then thanked the jurors again, at length, and concluded:

"I take it that at least some of the attorneys are going to want to come down there and talk to you for a few minutes, so if you can see your way clear to staying for a few minutes, I think they would appreciate it. [¶] We have a matter we have to take up out of your presence. We'll be with you shortly."

The parties then discussed whether [Petitioner's] on-bail enhancement was a trial or sentencing issue. Several times during the discussion, the court suggested that the jury be brought back into the courtroom. When [Petitioner] eventually waived jury trial, the court asked counsel, "Can we let the jury go? All three counsel said "yes," and the trial court said, "The jury is released with my apologies." On this record, it does not appear that the court lost control of the jury; thus, the jury could have been called upon to decide the on-bail enhancement allegation.

...............................................................................................................

In this case, the jurors "left the box" but apparently returned to a jury deliberations room for a few minutes. They were not dispersed nor released from the court's control to the outside world. There is nothing in the record to indicate they were exposed or even potentially exposed to any outside influence; indeed, the record indicates to the contrary. This case is analogous to those in which the jurors did not leave the jury box. We conclude the court did not lose control of the jurors and could have called them to the courtroom to consider the enhancement allegation. Accordingly, there is no reasonable probability that a more favorable outcome would have been reached had counsel not permitted [Petitioner] to waive his right to a jury trial. (*People v. Frye*, *supra*, 18 Cal.4th at p. 979.)

(Exhibit B, at pp. 16-19.)

As Respondent points out, it appears that Petitioner's trial counsel was confused as to whether Petitioner had a right to have the "on bail" issue determined by the jury. However, one reasonable option was for Petitioner to request bifurcation and waive a jury trial by admitting the allegation. Stated otherwise, competent counsel (as was done in this case) could have either requested bifurcation, waived trial, and admitted the allegation; or requested bifurcation, and tried the issue to the jury or to the court. Thus, Petitioner could have admitted guilt or had it determined by a trier of fact. Furthermore, there is simply no basis for the conclusion that Petitioner would have received a more favorable result had counsel acted any differently, as there is no evidence to dispute the "on bail" allegation. In addition, for the reasons explained by the state appellate court the jury had not been legally discharged and dispersed. Had Petitioner chose to have the issue tried by the jury, the record supports the finding that the jury remained available

13

1   to do so.  Based on the foregoing, Petitioner has not and cannot demonstrate any resulting

2   prejudice as required by Strickland, and the claim must be denied on the merits.

3   E.      Due Process Violation/Permission of Listening to Audiocassette Tape Recording

4           Petitioner contends that his due process rights were violated when the trial court allowed

5   the jury to hear a CD recording of his conversation in jail with Garcia rather than the tape

6   recording of the same conversation which was admitted into evidence.  Petitioner contends this

7   exposed the jury to extrinsic evidence.

8           In its case in chief the prosecution presented testimony by Jeffrey Hall, a sound

9   production engineer, regarding his efforts to enhance the tape recording of the conversation

10  between Petitioner and his co-defendant.  Although Mr. Hall indicated that he was successful in

11  doing so, much of the communication on the recording remained very soft.  (RT 1827-1830.)

12  The enhanced version of the recording was placed on a CD, which was given to the Public

13  Defender's Office.  (RT 1841.)  Mr. Hall neglected to bring a copy of the CD to court, and the

14  Public Defender's Office had apparently returned their copy to the company.  (RT 1846.)

15          For the first time and during the course of the trial, the prosecutor obtained a copy of the

16  CD, and requested to play it on the computer in the courtroom.  Over defense counsel's

17  objection, the trial court allowed the prosecutor to do so.  (RT 2174-2178, 2189.)  Specifically,

18  the court stated:

19              I considered the objections by the defendants, and I have considered the
        factors in Evidence Code Section 352.  I don't think it will take up so much of the
20      Court's time that it would be objectionable on that ground, although we've spent a
        lot of time on this issue.  I'm talking about how much time it would take to
21      present it to the jury.  And I don't see confusion being caused by it.  And I don't
        think it's more prejudicial than probative.  And I don't think that the jury is going
22      to get misled.

23              This has been – these two claimed statements have been the subject of a
        considerable amount of testimony, and they don't come as surprises to the
24      defendants.  I think that the People's case has from the beginning, in effect,
        featured one statement by Mr. Garcia – or alleged statement by Mr. Garcia, and
25      alleged statement by [Petitioner].  And when I say – I say that because I believe
        the reports turned over to the defendants, or defense counsel, put both of them on
26      notice that the People wanted to prove up those two statements.
                So it's the two statements to the extent the jury finds they were made, have
27      been in the case from early on, and don't come as a surprise to anybody.

28  (RT 2195-2196.)

14

The relevant portions of the CD were played for the jury.  (RT 2198.)  While the jury was deliberating, they requested to hear the CD again.  Defense counsel objected arguing that it was not admitted into evidence and was not redacted.  (RT 3001-3003.)  The court allowed the CD to be played, since it had already been played during the evidence.  The prosecutor noted that "the only reason the People did not move that into evidence or attempt to move it into evidence is because it was not redacted."  (RT 3007.)

The attorneys agreed upon the portions to be played for the jury, and the CD was played in open court.  (RT 3311, 3314.)  All attorneys agreed that only the relevant and agreed upon portions were adequately played for the jury.  (RT 3316.)

The Court of Appeal rejected the claim in the last reasoned decision, stating:

> [Petitioner] and Garcia contend the trial court erred in permitting the playing of the CD during jury deliberations.  First, the CD had not been admitted into evidence.  Second, portions of the CD played during deliberations had not been played during trial, which improperly permitted the jury to consider matters that were not in evidence during trial. [Petitioners] also argue that the court failed to make an adequate record for review when it "permitted the jury to designate portions of the CD to be played by using Post-It notes on a transcript in a manner that did not preserve that communication for the record."  We find these contentions without merit.

> ...............................................................................................................

> In this case, given that all parties agreed that the content of the CD played for the jury during deliberations was identical to the content of the tape played for the jury during trial, even if we assume error, [Petitioners] have failed to show how it is reasonable probable that an outcome more favorable to them would have resulted in absence of the error.

> First, the two critical parts of the CD had been played for the jury during trial—[Petitioner's] alleged "Bimmer" statements and Garcia's "just take off" statement.  Second, every part of the CD played for the jury during deliberations covered the exact part of the audiotape played for the jury during trial, and the jury had the audiotape available to play during deliberations.  Third, the transcript accompanying the CD was the same transcript the jury used to help it decipher the audiotape.  Finally, nothing about the CD per se rendered it inadmissible.  The CD would have been admitted into evidence had the necessary technology been available during trial to redact it consistent with the audiotape.

> On this record, [Petitioners] have not shown it is reasonably probable that an outcome more favorable to them would have resulted in the absence of the error.  We also reject [Petitioners'] perfunctory claim that the error violated due process.  In any event, we find not basis for reversal under the harmless beyond a reasonable doubt standard of *Chapman v. California* (1967) 386 U.S. 18, 24. (See *People v. Clair*, *supra*, 2 Cal.4th at p. 669, fn. 10.)

1    (Exhibit B, Opinion, at pp. 8-9.)

2          The Sixth Amendment guarantees all criminally accused a fair trial by an impartial jury

3    and all findings must be based only on the evidence presented at trial.  Turner v. Louisana, 379

4    U.S. 466, 472-473 (1965).  In rendering its verdict, the jury may not consider extrinsic evidence,

5    i.e. evidence not presented at trial.  Marino v. Vasquez, 812 F.2d 499, 504 (9th Cir. 1987).  Jury

6    exposure to extrinsic evidence does not necessarily constitute per se reversible error.  In

7    determining whether exposure of the jury to unauthorized information denies Petitioner a fair

8    trial, the reviewing Court must determine whether the jury would have decided the facts of the

9    case differently as a result of their exposure.  Dyer v. Calderon, 113 F.3d 927, 946-948 (9th Cir.

10   1997), vacated on other grounds, 151 F.3d 970 (9th Cir. 1998) (en banc).  Petitioner is only

11   entitled to relief under section 2254 if he can establish that the exposure to unauthorized

12   information had a "'substantial and injurious effect or influence in determining the jury's

13   verdict.'"  Sassounian v. Roe, 230 F.3d 1097, 1108 (9th Cir. 2000) (quoting Brecht v.

14   Abrahamson, 507 U.S. 619, 623 (1993)).  That is, "actual prejudice" must be present.  Brecht,

15   507 U.S. at 637.

16         The state courts' determination of this issue was not contrary to, or an unreasonable

17   application of, clearly established Supreme Court precedent. A review of the record clearly

18   supports the state court's finding the playing of the CD did not result in prejudice to Petitioner.  It

19   is difficult to image how prejudice could have resulted, as the tape recording of the exact

20   conversation was admitted into evidence.  RT 1814, 2128-2146.)  Although the CD was not

21   admitted into evidence, the only reason for this was because it could not be redacted.  The

22   attorneys spent a significant amount of time determining which portions were relevant, all agreed

23   on the portions to be played, and all agreed that only those relevant portions were actually played

24   for the jury.  Because the jury did not hear anything that it had not already heard during the trial,

25   it simply cannot be said that Petitioner suffered any resulting prejudice, and his claim fails on the

26   merits.

27   F.    Sentencing Error/Factors in Aggravation

28         Petitioner contends that the imposition of the upper term imposed by the trial violated the

holding in <u>Blakely v. Washington</u>, 542 U.S. 296 (2004).

On February 10, 2004, Petitioner was sentenced to the upper term of nine years on Count I, enhanced by 10 years for personal use of a firearm, and by two years for being on bail at the time.  On Count II, Petitioner received the upper term of five years, to be served concurrently, and on Count III, he received the upper term of four years, to be served concurrently.  Thus, the total term was 21 years.  (CT 258-259.)

Petitioner presented this issue on direct appeal to the California Court of Appeal and the California Supreme Court.  The opinion of the Court of Appeal is the last reasoned decision addressing the merits of the claim.  In rejecting Petitioner's claim, the Court of Appeal, relying on state law as it existed at that time, held:

> The California Supreme Court recently rejected this argument and concluded that the judicial factfinding that occurs when a judge exercises discretion in imposing an upper term sentence or consecutive terms under California law does not implicate a defendant's Sixth Amendment right to a jury trial.  (*People v. Black* (2005) 35 Cal.4th 1238, 1244.)  We are obligated to follow the decisions of our high court.  (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

(Exhibit B, Opinion, at pp. 19-20.)

In <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 120 S.Ct. 2348 (2000), the Supreme Court overturned a sentencing scheme that allowed a state judge to enhance a defendant's penalty beyond the prescribed statutory maximum upon finding, by a preponderance of the evidence, that the defendant "acted with a purpose to intimidate an individual or group of individuals because of race, color, gender, handicap, religion, sexual orientation, or ethnicity."  <u>Apprendi v. New Jersey</u>, 530 U.S. at 469.  The Supreme Court reversed, holding that "any fact that increases the penalty for a crime *beyond the prescribed statutory maximum* must be submitted to jury, and proved beyond a reasonable doubt."  <u>Id</u>. at 490. (Emphasis added.)

In <u>Blakely v. Washington</u>, 542 U.S. 296, 124 S.Ct. 2531 (2004), the Court explained that the "statutory maximum" for *Apprendi* purposes is the "maximum" sentence a judge may impose solely on the basis of facts reflected in the jury verdict or admitted by the defendant.  In other words, the relevant "statutory maximum " is not the maximum sentence a judge may impose

1  after finding additional facts, but the maximum he may impose without any additional facts." <u>Id</u>.

2  at 303-304.

3       In both <u>Apprendi</u> and <u>Blakely</u>, state law established an ordinary sentencing range for the

4  crime the defendant was convicted of committing, but allowed the court to impose a sentence in

5  excess of that range if it determined the existence of specified facts not intrinsic to the crime.  In

6  each case the Supreme Court held that a sentence in excess of the ordinary range was

7  unconstitutional because it was based on facts that were not admitted by defendant or found true

8  by the jury beyond a reasonable doubt.

9       In <u>United States v. Booker</u>, 543 U.S. 220, 125 S. Ct. 788 (2005), the Court applied its

10  holding in <u>Blakely</u> to the Federal Sentencing Guidelines, finding the Guidelines unconstitutional.

11  In reforming the Guidelines, the Court stated "If the Guidelines as currently written could be read

12  as merely advisory provisions that recommended, rather than required, the selection of particular

13  sentences in response to differing sets of facts, their use would not implicate the Sixth

14  Amendment.  We have never doubted the authority of a judge to exercise broad discretion in

15  imposing a sentence within a statutory range." <u>Id</u>. at 233.  "For when a trial judge exercises his

16  discretion to select a specific sentence within a defined range, the defendant has no right to a jury

17  determination of the facts that the judge deems relevant."  <u>Id</u>.

18       In <u>People v. Black</u>, 35 Cal. 4th 1238 (June 20, 2005), the California Supreme Court held

19  that California's Determinative Sentencing Law satisfied federal constitutional law as follows:

20  "*Blakely* and *Booker* established a constitutionally significant distinction between a sentencing

21  scheme that permits judges to engage in the type of judicial fact finding typically and

22  traditionally involved in the exercise of judicial discretion employed in selecting a sentence from

23  within the range prescribed for an offense, and a sentencing scheme that assigns to judges the

24  type of fact-finding role traditionally exercised by juries in determining the existence or

25  nonexistence of elements of an offense."  <u>People v. Black</u>, 35 Cal.4th at 1253.  "[I]n operation

26  and effect, the provisions of the California determinate sentence law simply authorize a

27  sentencing court to engage in the type of fact-finding that traditionally has been incident to the

28  judge's selection of an appropriate sentence within a statutorily prescribed sentencing range." <u>Id</u>.

1    at 1254.  The Court held that the "presumptive" midterm does nothing more than establish a

2    "reasonableness" constraint on an otherwise wholly discretionary sentencing choice akin to that

3    which the United States Supreme Court has deemed constitutional.  Id. at 1261.

4          Most recently, in Cunningham v. California, __ U.S. __, 127 S.Ct. 856 (2007), the

5    Supreme Court overruled the holding in Black, and held that the middle term in California's

6    determinate sentencing law was the relevant statutory maximum for the purpose of applying

7    Blakely and Apprendi.  Id. at 868.  Specifically, the Court held that imposing the upper sentence

8    violated the defendant's Sixth and Fourteenth Amendment right to a jury trial because it "assigns

9    to the trial judge, not the jury, authority to find facts that expose a defendant to an elevated

10   'upper term' sentence."  Id. at 860.

11         "State convictions are final 'for purposes of retroactivity analysis when the availability of

12   direct appeal to the state courts has been exhausted and the time for filing a petition for a writ of

13   certiorari has elapsed or a timely filed petition has been finally denied.'"  Beard v. Banks, 542

14   U.S. 406, 411 (2004) (quoting Caspari v. Bohlen, 510 U.S. 383, 390 (1994)).  Here, Petitioner's

15   conviction became final on September 13, 2005, when the ninety day period after the California

16   Supreme Court denied his petition expired.  Barefoot v. Estelle, 463 U.S. 880, 887 (1983);

17   Bowen v. Roe, 188 F.3d 1157, 1159 (9th Cir.1999) (concluding period of "direct review" includes

18   the period within which one can file a petition for a writ of certiorari in the United States

19   Supreme Court); Smith v. Bowersox, 159 F.3d 345, 347 (8th Cir.1998).  Apprendi, Blakely, and

20   Booker were all decided before Petitioner's conviction became final; however, Cunningham was

21   not decided until January 22, 2007, well after Petitioner's conviction became final.

22         Because the state court's decision was issued prior to Cunningham, the issue becomes

23   whether that decision should be applied retroactively to Petitioner on collateral review, which has

24   not yet been addressed by the Ninth Circuit Court of Appeals.  For the reasons discussed infra,

25   this Court, like several other district courts, finds in the negative.  See e.g. Fennen v. Nakayema,

26   494 F.Supp.2d 1148, 1155-1156 (E.D. Cal. 2007); Jordan v. Evans, 2007 WL 2703118, *10-11

27   (S.D. Cal.); Marquez v. Evans, 2007 WL 2406867, *8-9 (N.D. Cal.).

28         In Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060 (1986), the Supreme Court held that

1    "new constitutional rules of criminal procedure will not be applicable to those cases which have

2    become final before the new rules are announced." Teague, 489 U.S. at 310.  A new rule is one

3    which "breaks new ground or imposes a new obligation on the States or the Federal

4    Government;" in other words, a new rule is one where "the result was not dictated by precedent

5    existing at the time of the defendant's conviction became final." Teague, 489 U.S. at 301; Snook

6    v. Wood, 89 F.3d 605, 612 (9th Cir. 1996).

7        A Teague analysis requires the Court to engage in a three step process.  First, the Court

8    must determine the date the petitioner's conviction became final.  See Caspari v. Bohlen, 510

9    U.S. 383, 390, 114 S.Ct. 948, 953-954 (1994); Snook, 89 F.3d at 612.  Second, the Court must

10   survey the legal landscape as it existed when the petitioner's conviction became final and

11   determine whether a state court considering the petitioner's claim at that time would have felt

12   compelled by existing precedent to conclude the new rule was required by the Constitution.

13   Caspari, 510 U.S. at 390; Saffle v. Parks, 494 U.S. 484, 488 110 S.Ct. 1257, 1260 (1990).  Third,

14   if the Court determines that the petitioner seeks the benefit of new rule, the Court must consider

15   whether the relief sought falls within one of the two narrow exceptions to non-retroactivity.  See

16   Gilmore v. Taylor, 508 U.S. 333, 345, 113 S.Ct. 2112, 2119 (1993).  The two narrow exceptions

17   are (1) "the rule places a class of private conduct beyond the power of the State to proscribe . . .

18   or addresses a substantive categorical guarante[d] accorded by the Constitution;" or (2) the rule

19   announces a "watershed rule[ ] of criminal procedure implicating the fundamental fairness and

20   accuracy of the criminal proceeding." Graham, 506 U.S. at 477-78, 113 S.Ct. 892, 903 (internal

21   quotations omitted).  The first exception only applies to rules that place certain private

22   "individual conduct beyond the power of the criminal law-making authority to proscribe."

23   Teague, 489 U.S., at 307.  The second exception applies to watershed rules, which are those rules

24   that are "central to an accurate determination of innocence or  guilt." Teague, 489 U.S. at 313,

25   109 S.Ct. 1060.  Watershed rules of criminal procedure implicate "the fundamental fairness and

26   accuracy of the criminal proceeding," Saffle, 494 U.S. at 495;  Teague, 489 U.S. at 311, and are

27   the small core of rules that require procedures which are implicit in the concept of ordered

28   liberty. Graham, 506 U.S. at 478, 113 S.Ct. at 903.

As was the case in <u>Blakely</u>, <u>Cunningham</u> shifted the decision-making authority from the judge to the jury to determine any facts which may increase a defendant's sentence, such determination is a procedural rather than substantive rule.  Further, a mere change in the law as to the decision-making authority regarding factual findings bearing on a sentence enhancement is not a watershed rule in criminal procedure.  <u>See</u> <u>Schardt</u>, 414 F.3d at 1036.

First, neither <u>Apprendi</u>, <u>Blakely</u>, or <u>Booker</u>, have been applied retroactively.  <u>Sanchez-Cervantes</u>, 282 F.3d 664, 666-667 (9th Cir. 2002); <u>Schardt v. Payne</u>, 414 F.3d 1025 (9th Cir. 2005); <u>United States v. Cruz</u>, 423 F.3d 1119, 1121 (9th Cir. 2005).  This being so, it appears highly unlikely that <u>Cunningham</u> would be applied retroactively.  This finding is supported by several district courts that have addressed the issue.  <u>See</u> <u>e.g.</u> <u>Fennen v. Nakayema</u>, 494 F.Supp.2d 1148, 2007 WL 1742339 (E.D. Cal., June 14, 2007); <u>Rosales v. Horel</u>, 2007 WL 1852186 (S.D. Cal., June 26, 2007); <u>Salerno v. Schriro</u>, 2007 WL 2153584 (D. Ariz., July 24, 2007).

To the extent Petitioner may argue that <u>Blakely</u> was decided before his conviction became final, and <u>Cunningham</u> is merely an extension of the holding in <u>Blakely</u> and should be applied retroactively, such argument is not persuasive.  To make that determination, this Court would have to find that the holding in <u>Cunningham</u> was dictated by <u>Blakely</u>.  A new rule is defined as "a rule that ... was not 'dictated by precedent existing at the time the defendant's conviction became final.'"  <u>Whorton v. Bockting</u>, __ U.S. __, 127 S.Ct. 1173, 1181 (2007).  This Court finds that <u>Cunningham</u> constitutes a "new rule" under <u>Teague</u>.  As the holding in <u>Cunningham</u> is similar in reasoning to the holdings in <u>Apprendi</u>, <u>Blakely</u>, and <u>Booker</u>, it too constitutes a "new rule" under <u>Teague</u>.

Further, the <u>Cunningham</u> decision was a six-member majority opinion.  Justices Alito, Kennedy, and Breyer, filed a dissenting opinion, reasoning that <u>Apprendi</u> should not be extended to California's determinate sentencing law, because the sentencing scheme was indistinguishable

1  from the *advisory* Guideline scheme approved of in <u>Booker</u>.[4]  Justice Alito, writing for the

2  dissent stated that "the Booker Court unanimously agreed that judicial factfinding under a purely

3  advisory guidelines system would [] comport with the Sixth Amendment." <u>Cunningham</u>, 127

4  S.Ct. at 874.  It was noted that "the California law gives a judge at least as much sentencing

5  discretion as does the post-<u>Booker</u> federal scheme." <u>Id</u>. at 877. "The California scheme-like the

6  federal 'advisory Guidelines'-does require that this discretion be exercised reasonably." <u>Id</u>. at

7  878.

8          In light of the split and strong dissent in the <u>Cunningham</u> decision, it simply cannot be

9  said that the result in <u>Cunningham</u> was dictated by <u>Blakely</u>.  Even though the holding in <u>Blakely</u>

10  was the central reasoning in support of the majority opinion in <u>Cunningham</u>, mere application of

11  a prior decision is not equivalent to being "dictated by precedent."  In light of the fact that three

12  justices found that California's sentencing scheme was more akin to the advisory Guidelines of

13  which <u>Booker</u> approved, this Court finds that "reasonable jurists" could find the same.  <u>See</u> <u>e.g.</u>

14  <u>Whorton v. Bockting</u>, 127 S.Ct. at 1181.

15          Finally, the <u>Cunningham</u> decision does not come within either of the two exceptions to

16  the Teague nonretroactivity doctrine.  The <u>Cunningham</u> decision is strictly a procedural rule that

17  does not prohibit punishment for a certain class of individuals because of their status or offense,

18  nor is the mere fact finding change from judge to jury upon which to impose an upper term

19  sentence announce a watershed rule of criminal procedure.  <u>See</u> <u>Graham v. Collins</u>, 506 U.S. at

20  477-78 (the two narrow exceptions are (1) "the rule places a class of private conduct beyond the

21  power of the State to proscribe . . . or addresses a substantive categorical guarante[e] accorded by

22  the Constitution;" or (2) the rule announces a "watershed rule[ ] of criminal procedure

23  implicating the fundamental fairness and accuracy of the criminal proceeding.") (internal

24  quotations omitted.)

25          Next, the issue becomes whether the state courts' determination of this issue was

26

27          [4] Justices Kennedy and Breyer also believed that Apprendi could be applied to only sentencing
28  enhancements based on the nature of offense (jury determination) and not the nature of the offender (judicial
    determination).  127 S.Ct. at 872-873.

contrary to, or an unreasonable application of Supreme Court authority.  As just stated, the

imposition of the upper-term was based, in part, on Petitioner's prior convictions.  Although in

Cunningham, the Supreme Court invalidated California's upper-term sentencing scheme based

on facts not found by the jury, it specifically acknowledged, as it did in prior cases, that sentences

based on a defendant's prior convictions does not violate the Sixth Amendment.  Cunningham,

127 S.Ct. At 860, 864, 868; accord Blakely, 542 U.S. at 301; Apprendi, 530 U.S. at 490;

Almendarez-Torres v. United States, 523 U.S. 224 (1998).  To this end, the trial court found that

the upper-term was warranted based at least, in part, on Petitioner's prior convictions and

sustained petitions.  (RT 3908-3910.)  Finding no factors in mitigation, the trial court found the

upper term was justified by the aggravating circumstances of Petitioner's escalating criminality

including a large number of convictions and sustained petitions and history of violations of

parole and probation. (RT 3908-3909.)

The United States Supreme Court has never defined the scope of the prior conviction

exception; however, circuit case law supports the finding that it is reasonable to conclude that

this exception includes the type of judicial findings made by the trial court in this case.[5]  To

illustrate, the Second Circuit Court of Appeals, has held that the prior conviction exception

includes "not only the mere fact of previous convictions but other related issues as well.  Judges

frequently must make factual determinations for sentencing, so it is hardly anomalous to require

that they also determinate the 'who, what, when, and where' of a prior conviction."  United

States v. Santiago, 268 F.3d 151, 156 (2d Cir. 2001); see also United States v. Fagans, 406 F.3d

138, 141-142 (2d Cir. 2005) ("the type and length of a sentence imposed seem logically to fall

within this exception.") The Eighth Circuit Court of Appeals has determined that the prior

conviction exception applies to "sentencing-related circumstances of recidivism," stating "that it

is entirely appropriate for judges to have 'the task of finding not only the mere fact of previous

convictions but other related issues as well.'" United States v. Kempis-Bonola, 287 F.3d 699,

703 (8th Cir. 2002).  In addition, the Tenth Circuit Court of Appeals has stated that "the 'prior

---

[5] Out-of-circuit federal and state appellate court decisions are helpful in determining the reasonableness of a particular state court adjudication.  LaJoie v. Thompson, 217 F.3d 663, 669 n.6 (9th Cir. 2000),

23

1   conviction' exception extends to 'subsidiary findings' such as whether a defendant was under

2   court supervision when he or she committed a subsequent crime." United States v. Corchado,

3   427 F.3d 815, 820 (10th Cir. 2005).

4        In addition, several state courts, including the California Supreme Court have likewise

5   found that the prior conviction exception includes the type of finding as was made in the instant

6   case.  More specifically, the California Supreme Court has noted that the exception includes

7   more than the mere fact of a prior conviction and includes such matters as the sentence imposed

8   and the status and timing of the incarceration in relation to the subsequent offenses.  People v.

9   McGee, 38 Cal.4th 682, 700-703 (2006) (citing with approval People v. Thomas, 91 Cal.App.4th

10  212, 221-222 (2001)); see also State v. Stewart, 791 A.2d 143, 151-152 (Md. 2002) (prior

11  conviction exception "is not limited solely to prior convictions.  The general rule is that there is

12  no right to a jury trial on matters related to the broader issue of recidivism.").  The Supreme

13  Courts of Washington, Connecticut, Indiana, and Minnesota have all held that the exception may

14  include a determination of whether the defendant was on probation at the time of the current

15  offense.  See State v. Jones, 149 P.3d 636, 640-641 (Wash. 2006); State v. Fagan, 905 A.2d

16  1101, 1121 (Conn. 2006); Ryle v. States, 842 N.E.2d 320, 323-325 (Ind. 2005); State v. Allen,

17  706 N.W.2d 40, 47-48 (Minn. 2005).

18       Moreover, in California, "[a] single aggravating factor is sufficient to impose an

19  aggravated upper prison term where the aggravating factor outweighs the cumulative effect of all

20  mitigating factors. . . ."  People v. Nevill, 167 Cal.App.3d 198, 202 (1985); see also People v.

21  Black, 41 Cal.4th 799, 806 (2007).  Here, the state courts' determination of this issue was not

22  contrary to, or an unreasonable application of, clearly established Supreme Court precedent, as

23  the trial court's imposition of the upper term was properly based at least, in part, on Petitioner's

24  recidivism, and Petitioner was not entitled to a jury trial on such findings.

25       Furthermore, even if there was error under Blakely, Petitioner has not established the

26  requisite harm.  Blakely errors are subject to harmless error analysis as it is not considered to be a

27  structural error.  Washington v. Recuenco, 548 U.S. 212, 126 S.Ct. 2546 (2006).  In a habeas

28  corpus proceeding, the proper standard of review is that announced in Brecht v. Abrahamson,

24

1   507 U.S. 619, 623 (1993), whether the error had a "substantial and injurious effect."  This is so,

2   regardless of whether the state appellate court recognized the error and reviewed it for

3   harmlessness under the "beyond a reasonable doubt" standard of Chapman v. California, 386

4   U.S. 18, 24 (1967).  Fry v. Pliler, __ U.S. __, 127 S.Ct 2321, 2325-2327 (2007).  Because only

5   one aggravating factor need be found to impose the upper term sentence, the error is harmless if

6   the jury could have found, at a minimum, at least one of the aggravating circumstances true

7   beyond a reasonable doubt.

8          Here, any error was harmless as the imposition of the upper term was based on

9   uncontested or overwhelming evidence of Petitioner's recidivism.  It was undisputed that

10  Petitioner had a lengthy criminal history beginning at the mere age of 11, including numerous

11  convictions and/or sustained petitions and violations of probation and/or parole. (CT 267-268.)

12  Accordingly, there was ample evidence for the jury to render a verdict beyond a reasonable doubt

13  on the above recidivist circumstances, any one of which would have authorized the imposition of

14  the upper term.  This is particularly so, given the lack of any mitigating factors and the strong

15  overwhelming evidence supporting the recidivist factors in aggravation.  Based on the foregoing,

16  the Court finds that any error was harmless under Brecht, and the claim should be denied.

## ORDER

18         Based on the foregoing, it is HEREBY ORDERED that:

19  1.     The instant petition for writ of habeas corpus is DENIED;

20  2.     The Clerk of Court is directed to enter judgment in favor of Respondent; and,

21  3.     The court declines to issue a Certificate of Appealability. 28 U.S.C. § 2253(c);

22         Slack v. McDaniel, 529 U.S. 473, 484 (2000) (a COA should be granted where

23         the applicant has made "a substantial showing of the denial of a constitutional

24         right," i.e., when "reasonable jurists would find the district court's assessment of

the constitutional claims debatable or wrong"; <u>Hoffman v. Arave</u>, 455 F.3d 926, 943 (9th Cir. 2006) (same).  In the present case, the Court finds that reasonable jurists would not find it debatable that the state courts' decision denying Petitioner's petition for writ of habeas corpus were not "objectively unreasonable."

IT IS SO ORDERED.

Dated:    **May 9, 2008**                  **/s/ Dennis L. Beck**    
                                         UNITED STATES MAGISTRATE JUDGE